UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PEREZ RUBIO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:21-cv-01795-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff presents the following issue: "Whether the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints." (ECF No. 16, p. 3).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. RFC

Plaintiff challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks with only occasional changes in the work setting. He can have occasional interaction with supervisors and coworkers but no interaction with the public but can be in the same proximity as the public.

(A.R. 19).

Specifically, Plaintiff argues that, had the ALJ properly evaluated his subjective complaints regarding his mental limitations, the ALJ would have included further limitations in the RFC, which might have precluded all work, leading to Plaintiff being found disabled. (ECF No. 16, pp. 9-15).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

In terms of evaluating a Plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

>Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective complaints "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 20). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony. Here, the ALJ summarized Plaintiff's subjective complaints and the reasons for discounting them as follows:

>The claimant alleges he does not like to be around other people because they have no manners and are rude, which makes him mad so he self isolates in his bedroom. The claimant alleges his mother has to remind him to do things and schedules all of his appointments for him. The claimant alleges he only goes to individual therapy, but group therapy because he does not like being around others. The claimant's representative alleged in a pre-hearing brief the claimant experiences "severe, chronic pain and persistent psychological limitations" yet alleged no physical impairment to account for said pain (14E, 3). The representative further alleged the claimant has various anxiety symptoms including 1-2 panic attacks a week, visual hallucinations, and various depression symptoms including daily crying, which the claimant testified he cries only "here and there" (hearing testimony; 14E, 3).
>
>. . . .

The evidence of record supports the above RFC. Specifically, the longitudinal record shows the claimant's mental symptoms are well managed.

. . . .

In February 2020, at the time of his alleged onset date (AOD), the claimant had an annual mental health assessment. He alleged anxiety, depression, anger, and paranoia but denied suicidal/homicidal ideations, hallucinations, and manic episodes. His reported symptoms met the criteria for major depressive disorder with anxious distress, paranoid personality disorder, and anxiety. He admitted he was independent in his activities of daily living (4F, 4-5). It was noted that while the claimant used to have his mother sit outside the door during his 20-minute therapy sessions, now he can last an hour. He admitted he attended his son's graduation, went to the fair with friends at least twice, worked with his friend to build a fence, had a girlfriend of one month, and alleged playing with his phone helps relieve his anxiety (4F, 5-6). . . . He also acknowledged he had two sons ages 11 and 13 whom he had good relationships with and whom he sees on weekend visitation (4F, 6-7). . . . He also alleged an explosive temper and that he was currently on parole (4F, 9).

Part of the mental health assessment included a mental status examination which showed the claimant was alert, oriented, and guarded with appropriate attire, good eye contact, and posturing motor activity but unremarkable behavior. He had an anxious/fearful mood and affect, normal speech, coherent thought process, paranoid ideation, and normal attention and concentration. He had average intelligence, fair insight, good judgment, good recent memory, and fair remote/longterm memory (4F, 11-14). He was diagnosed with recurrent depression with anxious distress, panic disorder, and paranoid personality disorder with rule out social phobia disorder (4F, 15).

In March 2020, the claimant had a follow up appointment with his psychiatrist where he was in no distress, admitted he was independent in his activities of daily living, denied any physical complaints, denied any medication side effects, and denied any suicidal/homicidal ideations or hallucinations (5F, 46). Examination showed he had an anxious/depressed mood, but otherwise unremarkable findings and his risk for hospitalization or dangerous behaviors was deemed to be low, suggesting his symptoms were not as limiting as may have been alleged (5F, 47-48, 54). By April 2020, the claimant was again in no distress, had relatively normal examination findings including an euthymic mood, admitted Propranolol was helping his anxiety, and his risk for hospitalization or dangerous behaviors was again deemed to be low (5F, 57-59, 65).

May [] 2020 treatment notes show the claimant was again in no distress, was independent in his activities of daily living, denied any medication side effects, had no physical complaints, denied any suicidal/homicidal ideations or hallucinations, and admitted he was doing well on his medications (5F, 68). His mental status exam was again fairly normal with an euthymic mood, unremarkable thought process and thought content, fair judgment and insight, fair memory,

> intact attention and concentration, and average intelligence (5F, 69-70). His risk for hospitalization or dangerous behaviors was again deemed to be low (5F, 76). . . .
>
> In July 2020, the claimant alleged some irritability but admitted it was not a problem, and he was again in no distress, had relatively normal examination findings including an euthymic mood, and was again deemed at low risk for hospitalization or dangerous behaviors (6F, 7-9, 15). . . .
>
> Treatment notes for September, November, and December 2020 all showed the claimant was in no distress, was able to maintain his activities of daily living, denied any medication side effects, alleged no physical complaints, denied suicidal/homicidal ideations and hallucinations, and repeatedly admitted he was doing fine on his medications (7F, 15, 22, 29). His examinations continued to show relatively normal findings. He was oriented and cooperative with an unremarkable mood, unremarkable thought process and thought content, good judgment and insight, good memory, intact attention and concentration, and average intelligence (7F, 16-17, 23-24, 31). His risk for hospitalization or dangerous behaviors remained low (7F, 20, 27, 35).
>
> In January 2021, the claimant was again in no distress, admitted he was doing well on his medications, and agreed to transition to a lower level of care, suggesting his symptoms were well managed (7F, 37). His examination findings were again normal, his risk level was still low, and it was noted he continued to manage his symptoms (7F, 37, 39, 42, 45). At his yearly evaluation, he had an anxious/irritable mood but otherwise normal exam findings (7F, 52-54). It was opined the claimant had moderate impairment in social relationships and vocational/educational prospects and only mild impairment in independent living and physical care (7F, 46). . . .
>
> As the longitudinal record shows, the claimant's symptoms are well managed and not as severe as alleged. This is also supported by the claimant's own admissions of functionality. He admits he is independent in his personal care and activities of daily living, prepares meals, cleans, does laundry and all household chores required, shops via computer, uses a cell phone, can count change, goes to the fair, helped his friend build a fence, has a girlfriend, and watches television (6E; 4F, 4-6; hearing testimony).
>
> As such, the undersigned has accommodated the claimant's mental signs and symptoms in the RFC with the mental limitations. Because of a lack of more severe findings upon examination and because of the claimant's own admissions of functionality, no further limitation is warranted (4F-8F).

(A.R. 20-22).

First, the ALJ reasonably relied on medical evidence indicating that Plaintiff's "mental symptoms [were] well managed" to discount the severity of symptoms that Plaintiff alleged. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict

between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). Among these, records from medical appointments occurring from February 2020 to January 2021 generally showed Plaintiff was in no distress, his risk level of dangerous behaviors and hospitalization was low, and Plaintiff admitted he was doing well. (*See, e.g.*, AR 423 – February 2020 exam reporting alert consciousness, good eye contact, and unremarkable behavior; AR 531 – April 2020 record reporting low risk for dangerous behaviors and hospitalization; A.R. 597 – January 2021 record where Plaintiff stated "he is doing well on his medications and states he will be transitioning to a lower level of care and is in agreement to this").

Likewise, the ALJ reasonably concluded that the "lack of more severe findings upon examination" did not support further limitations. (A.R. 22). *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Further, the ALJ was correct to note that Plaintiff's social activities—such as attending his son's graduation, working with his friend to build a fence, and having a girlfriend suggested that his subjective complaints about interacting with others were not as severe as claimed. (A.R. 21). *See Smartt*, 53 F.4th at 499 (noting that inconsistencies between activities and alleged severity of limitations is a clear and convincing reason to discount subjective complaints). Plaintiff asserts that these activities predate the relevant onset period and there is "no evidence that Plaintiff engaged in any such activities after the alleged onset date." (ECF No. 16, p. 12). However, this argument fails.  Plaintiff alleged disability beginning on February 21, 2020, and the cited activities appear in a mental health assessment dated February 12, 2020. While medical evidence predating the onset period is generally not relevant, the short time difference here between the assessment and onset date, combined with the fact that the evidence was relevant as part of the longitudinal history of Plaintiff's impairments, makes the information sufficiently relevant. *See Ovando v. Comm'r of Soc. Sec.*, No. 1:21-CV-00030-SAB, 2022 WL 2974654, at *3 (E.D. Cal.

July 27, 2022) (stating that ALJ's consideration of evidence prior to the alleged onset date in connection with assessing "the longitudinal history of Plaintiff's impairments" appeared "permissible in law"). Notably, in support of his own arguments, Plaintiff's brief cites the same February 2020 assessment. (*See* ECF No. 16, pp. 14-15 – citing A.R. 417). But even assuming that the ALJ should not have relied on the February 2020 assessment, Plaintiff's January 2021 reassessment (which the ALJ also cited (A.R. 22)) states that Plaintiff reported a "stable" relationship with family members, that he had "the support of his friend Mike, mother, and father," and that there were no changes from the February 2020 portion of the assessment where he reported having a girlfriend. (A.R. 606-08). Thus, there is evidence in the record showing his continuing ability to properly interact with others during the relevant period.

Lastly, it is worth noting that the ALJ also relied on state agency consultants in formulating the RFC. (A.R. 23). Among other things, they opined that Plaintiff was moderately limited in his ability to get along with coworkers or peers without exhibiting behavioral extremes and he was not significantly limited in his ability to accept instructions and respond appropriately to criticism from supervisors, ultimately concluding that Plaintiff was not disabled. (A.R. 60-62, 74-75). The ALJ deemed their opinions persuasive because "they were supported by specific references to the record and are consistent with other medical opinions and the relatively normal examination findings." (A.R. 23).

The Court recognizes that Plaintiff criticizes the ALJ's opinion for not discussing certain portions of the record that Plaintiff argues supports his position. However, a review of the ALJ's opinion in light of the record as a whole reveals that the ALJ sufficiently addressed the substance of Plaintiff's complaints, but ultimately determined that they could not be fully credited in light of other evidence. The Court cannot conclude that the ALJ erred by failing to say more or interpret the evidence differently. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Accordingly, the Court concludes that the RFC is supported by substantial evidence and that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective complaints.

## II. CONCLUSION AND ORDER

For the reasons given, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __February 6, 2023__         /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE